# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | |
|---|---|
| CARL E. WOODWARD, LLC, et al. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:09cv00781-LG-RHW |
| | ) |
| THE TRAVELERS INDEMNITY | ) |
| COMPANY OF CONNECTICUT, et | ) |
| al. | ) |
| | ) |
|     Defendants. | ) |

Prepared by R. Bryan Tilden, CPCU, CLU, ARM, ALCM, ChFC, CIC, SCLA
TILDEN AND ASSOCIATES
Pittsboro, North Carolina
August 17, 2010

1



# PREFACE

I, R. Bryan Tilden, have been engaged by counsel for Travelers Indemnity Company of Connecticut, et al., ("Travelers") to review certain materials relating to Policy Numbers I-680-9797B978-TIA-06, I-680-9797B978-TCT-07 and I-680-9797B978-TIL-08 ("Policy" or "Policies") issued to T. S. Wall & Son, Inc. ("Wall"), and to in summary provide opinions relating to the additional insured coverage issue and claims handling practices of Travelers, all as described in detail in this report.

I have over 36 years experience in the insurance and risk management industry as an author, broker, consultant, underwriter, drafter of policy forms and endorsements, teacher, historian, and claim consultant for both insureds and insurers. I have placed business, as a broker representing the insured, in the international insurance market, including coordinated placements with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British and European insurance companies. I have worked with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, Bermudian and European companies in the drafting and placement of insurance policies, both marine and non-marine, and in the adjustment of property and liability losses. I teach the construction, drafting, underwriting, adjusting and analysis of policies throughout the United States, the Caribbean, Bermuda and the European Union. I have testified in the United States and London regarding the above subject matter. I am familiar with the custom and practices of the international insurance marketplace, including the London and United States markets.

My curriculum vitae is attached hereto as Exhibit A. I prepared this report after reviewing the documents listed below. My billing rate for consulting expert and expert witness

2

work is $200 an hour.[1]  These are my opinions to a reasonable degree of professional certainty.

Because discovery is ongoing, I reserve the right to amend or supplement this report.

## DOCUMENTS REVIEWED

1. Complaint;

2. Pass Marianne's Answer and Cross Claim [State Court Action];

3. Pass Marianne's Arbitration Answering Statement and Counterclaim;

4. Travelers' Answer and Affirmative Defenses;

5. Owner and Design-Builder Agreement;

6. T. S. Wall Subcontract Agreement;

7. T. S. Wall Subcontract Agreement Change Orders;

8. Rimkus Report of Findings;

9. Rimkus 30(b)(6) Deposition Transcript;

10. Pass Marianne 30(b)(6) Deposition Transcript;

11. "Cost[s] to Repair" Document;

12. Arbitration Award;

13. May 6, 2009, Tender Letter;

14. Travelers' May 20, 2009, Letter;

15. Travelers' September 10, 2009, Letter;

---

[1]  No portion of my compensation is dependent upon the result of this litigation.

3

16. Brunini's October 13, 2009, Letter;

17. Travelers' November 4, 2009, Letter;

18. Travelers 2006 – 2007 Policy (T. S. Wall);

19. Travelers 2007 – 2008 Policy (T. S. Wall);

20. Travelers 2008 – 2009 Policy (T. S. Wall);

21. Acceptance Indemnity 2003 – 2004 Policy (DCM Corp.);

22. Acceptance Indemnity 2004 – 2005 Policy (DCM Corp.);

23. Acceptance Indemnity 2005 – 2006 Policy (DCM Corp.);

24. United Fire & Cas. Co. 2004 – 2005 Policy (Moses Electric);

25. United Fire & Cas. Co. 2005 – 2006 Policy (Moses Electric);

26. Gray Insurance Co. 2008 – 2011 Excess Policy (Woodward);

27. Woodward's Responses to Zurich's First Requests for Production;

28. Woodward's Responses to Zurich's First Set of Interrogatories;

29. Woodward's Supplemental Responses to Zurich's First Set of Interrogatories;

30. Plaintiff's Expert Report;

31. Affidavit of Walter Ketchings; and

32. Email from Brian Kimball (Brunini, Grantham, Grower & Hewes) to Doug Morgan
(Carroll Warren & Parker) dated November 18, 2009.

## SUMMARY OF ISSUES

This matter relates to the construction of a five story condominium project for Pass Marianne ("PM"). Carl E. Woodward, LLC, ("Woodward") entered into a design build contract with PM in June, 2005[2]. Woodward sub-contracted certain tile, carpet and counter top work to T. S. Wall ("Wall") with the contract dated December 28, 2006. The sub-contract required Wall to add Woodward as an additional insured and to indemnify them for the work performed by Wall[3]. The PM project was substantially completed in August of 2007[4].

A December 18, 2008, report prepared by Rimkus outlined alleged construction defects to the PM condominium project. The Rimkus report did not, by name, find that any of the work by Wall was defective. Rimkus did testify that the remedial work in connection with the failure of the balcony concrete pour to include a proper drainage slope would include removal of balcony tile[5]. PM did not find fault in Wall's work[6].

PM filed a cross-claim against Woodward on December 22, 2008, in the State Court Action. Woodward tendered its defense as an additional insured and indemnity for the claims asserted by PM against Woodward in the State Court Action and Arbitration Proceeding to Travelers by letter dated May 6, 2009. Travelers responded by letter dated May 20, 2009, acknowledging receipt of the tender, and advising Woodward that the documents provided would be reviewed. On September 10, 2009, Travelers advised Woodward that it had reviewed the documents provided at that time and that the Rimkus report did not mention Wall or allege that Wall is responsible or liable for any of the alleged construction deficiencies[7]. Travelers

---

[2] Rimkus Report, Page 1.
[3] Wall Subcontract, § 13, Page 8.
[4] Rimkus Report, Page 3.
[5] Rimkus 30(b)(6) Deposition, 339:16 – 340:4.
[6] Pass Marianne 30(b)(6) Deposition, 279:22 – 280:14.
[7] Travelers' September 10, 2009, Letter, Page 4.

requested that Woodward provide information that the alleged construction defects came from

Wall's work[8]. Specifically, Travelers stated:

> **"Please provide your analysis of any liability arising out of the work of T.S.[9] as related to the allegations presented against Woodward. Specifically, what damages or deficiencies are being alleged against T.S., and what, if any, resultant property damages have occurred or are alleged to have resulted from the work on the project completed by T.S.** Until we are provided the above requested information we can not make a final determination as to any defense obligation owed to Woodward as the coverages afforded are conditional based on T.S. having liability in the performance of T.S.'s work on the Project."

On October 5, 2009, Woodward and its insurance company, the Gray Insurance

Company, filed this action. Woodward's attorney responded to Travelers' September 10, 2009,

request by letter dated October 13, 2009, enclosing the "Cost[s] to Repair" document and

advising that PM testified about that document. The letter also stated that Woodward could

provide a transcript of PM's deposition.

Travelers responded by letter dated November 4, 2009, advising that the "Cost[s] to

Repair" document was not enclosed with the mailed letter and the faxed copy was illegible. It

also advised that the PM deposition was needed for further consideration. Further information

that had been requested by Travelers was provided by Woodward on November 18, 2009.

The matter was heard in American Arbitration Association Case Number 69 110 Y

00024 08. The Arbitration Proceeding concluded December 11, 2009. On January 11, 2010,

the arbitration award found that Woodward had to pay Wall the retainage under the sub-

contract.

---

[8] Travelers' September 10, 2009, Letter, Page 8.
[9] Travelers' September 10, 2009, Letter, Page 1, states "T.S. Wall & Sons, Inc. (hereinafter "T.S.")"

## OPINIONS

I. **Travelers acted in a reasonable manner in determining that there is no additional insured status for Woodward under the Travelers Policies.**

Basis for Opinion:

1. Woodward tendered its defense in the State Court Action and Arbitration to Travelers on May 6, 2009.

   a. The initial information provided by Woodward did not mention Wall by name as being a responsible party for the alleged construction defects.

   b. Nothing in the initial documentation suggested that Wall's work was at issue.

   c. A copy of the Sub-contract agreement dated December 28, 2006, between Wall and Woodward was provided to Travelers, including change orders.[10]

2. The Sub-contract states, in part:

   "**13.** <u>**INDEMNITY AND INSURANCE**</u>

   \* \* \* \* \*

   <u>Other Provisions</u> –

   A. Additional Insured – Subcontractor shall provide endorsements on General Liability, Automobile and Umbrella policies naming the Owner, Contractor and their subsidiaries, affiliates, employee, officers, directors, and agents of all of them."[11]

3. Wall's Travelers Policies included an Additional Insured endorsement, which states:

   "1. WHO IS AN INSURED (SECTION II) is amended to include as an insured any person or organization (called hereafter "additional insured") whom you have agreed in a written contract, executed prior to loss, to name as additional insured, but only with respect to liability arising out of "your work" or your

---

[10] Travelers' May 20, 2009, Letter, Page 2.
[11] T.S. Wall Sub-contract agreement, Page 8.

ongoing operations for that additional insured performed by you or for you."[12]

4.  The endorsement refers to the policy definition of "your work", which states:

> **"SECTION FIVE – DEFINITIONS**
>
> * * * * *
>
> **22.** "Your work":
>
>   **a.** Means:
>
>     **(1)** Work or operations performed by you or on your behalf; and
>
>     **(2)** Materials, parts or equipment furnished in connection with such work or operations.
>
>   **b.** Includes:
>
>     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
>
>     **(2)** The providing of or failure to provide warnings or instructions."[13]

5.  Travelers inquired, as is the custom and practice of the insurance industry, how the claim related to Wall's work.

  a.  The tender from Woodward was made May 6, 2009.

    i.  The initial information provided did not mention Wall by name as being a responsible party for the alleged construction defects.

    ii.  Nothing in the initial documentation suggested that Wall's work was at issue.

  b.  Travelers in their September 10, 2009, letter requested further information.  That letter, in part, stated:

> "Ultimately any obligation owed to Woodward as an additional insured is conditional on the alleged damages being a result of T.S.'s [14] work on the project.   Until such time we are provided information which

---

[12] Travelers Endorsement D1 05 04 94.
[13] CG 00 01 10 01, Pages 15 and 16 of 16.
[14] Travelers' September 10, 2009, Letter, Page 1, states "T.S. Wall & Sons, Inc. (hereinafter "T.S.")"

indicates T.S.'s work on the project is defective or otherwise implicated by the Plaintiff the policies requirements have not been met and coverage is not afforded."[15]

c.   Travelers in their November 4, 2009, letter stated:

"As we have previously indicated, we are desirous to obtain the information upon which you rely as the basis for your assertions. Yet, until such time as we are provided with this information, we remain in determination of any obligation owed to Woodward per your demands.

* * * * *

We remain in investigation of this matter and again respectfully request that you provide any information available, which supports any allegations that the alleged damages are the responsibility of our policyholder, T.S."[16]

d.   Information previously requested by Travelers regarding Wall's work being at issue in PM's claims against Woodward was provided to Travelers by Woodward November 18, 2009.[17]

6.   Travelers was reasonable in their interpretation, and provided their analysis of why additional insured status for Woodward was not triggered in a timely manner to Woodward.

7.   Based on the facts provided to Travelers, it is clear that Woodward does not meet the policy requirements to obtain the status of an additional insured.  In other words, these facts do not establish that the underlying claimant made any allegations that the damages arose out of Wall's work.

---

[15] Travelers' September 10, 2009, Letter, Page 12.
[16] Travelers' November 4, 2009, Letter, Page 2.
[17] Email from Brian Kimball (Bruhini, Grantham, Grower & Hewes) to Doug Morgan (Carroll Warren & Parker) dated November 18, 2009.

8.  Further, supporting Travelers' analysis, the Managing Member of PM executed on May 5, 2010,

a sworn affidavit stating:

> "**4.** Pass Marianne, LLC, at no time alleged any claim against T.S. Wall & Sons, Inc. nor was any money withheld by Pass Marianne, LLC from Carl E. Woodward, LLC due to any act or omission attributable to T.S. Wall & Sons, Inc.
>
> **5.** Pass Marianne, LLC did not initiate, sponsor, nor ratify any claim during this arbitration reflecting adversely upon the performance of T.S. Wall & Sons, Inc."

## II.     Travelers acted in a reasonable manner in determining that there is no obligation to indemnify Woodward under the Travelers Policies.

<u>Basis for Opinion:</u>

1.  Woodward tendered the State Court Action and Arbitration indemnity claims to Travelers May

6, 2009.

a.  The initial information provided did not mention Wall by name as being a responsible

party for the alleged construction defects.

b.  Nothing in the initial documentation suggested that Wall's work was at issue.

c.  A copy of the Sub-contract agreement dated December 28, 2006, between Wall and

Woodward was provided to Travelers, including change orders.[18]

2.  The Sub-contract states, in part:

> "**13.    INDEMNITY AND INSURANCE**
>
> "Subcontractor agrees to defend, indemnify and hold harmless Contractor and Owner, and their agents and employees, from and against any claim, cost, expense or liability (including attorneys' fees), attributable to bodily injury, sickness, disease or death, or to damage to or destruction of property (including loss of use thereof), caused by, arising out of, resulting from or occurring in connection with the performance of the Work by Subcontractor, its Subcontractors, or their agents, or employees, whether or not caused in part by the active or

---

[18] Travelers' May 20, 2009, Letter, Page 2.

10

passive negligence or other fault of a party indemnified hereunder; provided, however, Subcontractor's duty hereunder shall not arise if such injury, sickness, disease, death, damage or destruction is caused by the sole negligence of a party indemnified hereunder.  Subcontractor's obligation hereunder shall not be limited by the provisions of any workmen's compensation or similar act.

Should Owner or any other person assert a claim or institute a suit, action or proceeding against Contractor involving the manner or sufficiency of the performance of the Work, Subcontractor shall upon request of Contractor promptly assume the defense of such claim, suit, action or proceeding, at Subcontractors expense, and Subcontractor shall indemnify and hold harmless Contractor and its agents and employees, from and against any liability, loss, damage or expense arising out of or related to such claim, suit, action or proceeding."[19]

3.  The Travelers Policies provide coverage for contractual liability, subject to the terms and conditions of the Policies.

4.  Travelers inquired, as is the custom and practice of the insurance industry, how the claim related to Wall's work.

    a.  The tender from Woodward was made May 6, 2009.

        i.  The initial information provided did not mention Wall by name as being a responsible party for the alleged construction defects.

        ii.  Nothing in the initial documentation suggested that Wall's work was at issue.

    b.  Travelers in their September 10, 2009, letter requested further information.  That letter, in part, stated:

"Ultimately any obligation owed to Woodward as an additional insured is conditional on the alleged damages being a result of T.S.'s[20] work on the project.  Until such time we are provided information which indicates T.S.'s work on the project is defective or otherwise implicated

---

[19] T.S. Wall Sub-contract agreement, Page 8.
[20] Travelers' September 10, 2009, Letter, Page 1, states "T.S. Wall & Sons, Inc. (hereinafter "T.S.")"

by the Plaintiff the policies requirements have not been met and coverage is not afforded."[21]

e. Travelers in their November 4, 2009, letter stated:

"As we have previously indicated, we are desirous to obtain the information upon which you rely as the basis for your assertions. Yet, until such time as we are provided with this information, we remain in determination of any obligation owed to Woodward per your demands.

* * * * *

We remain in investigation of this matter and again respectfully request that you provide any information available, which supports any allegations that the alleged damages are the responsibility of our policyholder, T.S."[22]

f. Information previously requested by Travelers regarding Wall's work being at issue in

PM's claims against Woodward was provided to Travelers by Woodward November 18,

2009.[23]

5. Travelers was reasonable in their interpretation of the indemnity request, and provided their

analysis of why Woodward would not be indemnified in a timely manner to Woodward.

6. Further, supporting Travelers' analysis, the Managing Member of PM executed on May 5, 2010,

a sworn affidavit stating:

"**4.** Pass Marianne, LLC, at no time alleged any claim against T.S. Wall & Sons, Inc. nor was any money withheld by Pass Marianne, LLC from Carl E. Woodward, LLC due to any act or omission attributable to T.S. Wall & Sons, Inc.

**5.** Pass Marianne, LLC did not initiate, sponsor, nor ratify any claim during this arbitration reflecting adversely upon the performance of T.S. Wall & Sons, Inc."

---

[21] Travelers' September 10, 2009, Letter, Page 12.
[22] Travelers' November 4, 2009, Letter, Page 2.
[23] Email from Brian Kimball (Brunini, Grantham, Grower & Hewes) to Doug Morgan (Carroll Warren & Parker) dated November 18, 2009.

### III.   Allocation.

<u>Opinion and Basis for Opinion:</u>

1. If a determination is made that Travelers owes Woodward a duty to defend and/or indemnify, Travelers should not have joint and several liability with any other involved insurance carriers.

2. Prior to 1986, Commercial General Liability (CGL) policies agreed to "pay on behalf of the insured *all* sums which the insured shall become legally obligated to pay". In 1986, drafters of the CGL changed the insuring agreement to "*those* sums that the insured becomes legally obligated to pay".

   a. The "*those* sums" wording is in the Travelers Policies.

   b. This wording was inserted in 1986 to preclude joint and several liability found in "*all* sums" policies.

   c. In custom and practice, "*those* sums" wording would lead to a pro-rata or actual injury allocation.

3. One thing that is often overlooked is the removal of certain wording in the insuring agreement.

   a. The 1941 CGL stated that the insurer's duty to defend applied "even if any of the allegations of the suit are groundless, false of fraudulent".

   b. When ISO introduced the 1986 form, the insurer's duty to defend stated:

      > "We will have the right and duty to defend the insured against any "suit" seeking those damages . . . We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result . . ."

4. In 1991, ISO issued a memorandum to insurers advising that if they do not want to defend a suit for damages not covered by the policy, they should state their intentions in the policy. ISO provided mandatory endorsements to handle this issue.[24]

---

[24] ISO Filing GL-91-091CH.

5.  In 1996, ISO added a stipulation to the insuring agreement stating that the insurer has no duty

     to defend a suit seeking damages for bodily injury or property damage to which the insurance

     does not apply.  The wording specifically states:

> "However, we will have no duty to defend the insured against
> any "suit" seeking damages for "bodily injury" or "property
> damage" to which this insurance does not apply."[25]

    a.  The explanatory memorandum issued by ISO explaining this change stated:

> "clarify the intent under the coverage forms not to defend insureds when no
> coverage exists under the policy;"[26]

    b.  This wording exists in the Travelers CGL Policies.

6.  These revisions by ISO indicate the intent to pursue the right to allocate dating back to its

     deletion in 1986 of the "groundless, false or fraudulent" wording.

7.  As previously discussed, there are no allegations or facts that Wall's work was defective.  PM did

     not assert any claims against Woodward due to the work of Wall.

8.  Further, there is no defense or indemnity obligation under the Travelers Policies for defective

     construction claims for the work done by other Sub-contractors or Woodward.

## IV.   Travelers acted within the custom and practice of the insurance industry in determining the duty to defend and the duty to indemnify.

Basis for Opinion:

1.  The underlying cross-claim against Woodward by PM in the State Court Action was filed

     December 22, 2008.

2.  Woodward's tender to Travelers for defense and indemnity in the State Court Action and the

     Arbitration Proceeding was made May 6, 2009.

3.  Travelers acknowledged receipt of the Woodward tender on May 20, 2009.

---

[25] CG 00 01 10 01, Page 1 of 16.
[26] ISO Filing GL-95-095FC, Page 122.

4. Travelers reviewed the preliminary information provided and provided their initial coverage position September 10, 2009.

    a. This letter requested further information to complete the coverage analysis.

    b. The initial information provided did not mention Wall by name as being a responsible party for the alleged construction defects.

    c. Nothing in the initial documentation suggested that Wall's work was at issue.

5. In reviewing the documentation provided, it was apparent that the "Four Corners" test was applied by Travelers in determining Woodward's status as an additional insured.

    a. The September 10, 2009, letter explained that the additional insured status was contingent on Wall's work being at issue in PM's claims against Woodward.

    b. The initial information provided indicated deficiencies in the project on a broad basis, but did not name Wall specifically or indicate that Wall's work was at issue.[27]

    c. Travelers summarized their coverage position in that letter by stating:

> "Ultimately any obligation owed to Woodward as an additional insured is conditional on the alleged damages being a result of T.S.'s[28] work on the project.  Until such time we are provided information which indicates T.S.'s work on the project is defective or otherwise implicated by the Plaintiff the policies requirements have not been met and coverage is not afforded."[29]

---

[27] Travelers' September 10, 2009, Letter, Page 8.
[28] Travelers' September 10, 2009, Letter, Page 1, states "T.S. Wall & Sons, Inc. (hereinafter "T.S.")"
[29] Travelers' September 10, 2009, Letter, Page 12.

6.   The Travelers Policies state:

"SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\* \* \* \* \*

2.      Duties In The Event Of Occurrence, Offense, Claim Or Suit

\* \* \* \* \*

c.      You and any other involved insured must:

(3)      Cooperate with us in the investigation or settlement of the claim or defense against the "suit";"[30]

7.   This coverage action was filed by Woodward and The Gray Insurance Company on October 5, 2009.

   a.   The "Cost[s] to Repair" document was not attached to the mailed October 13, 2009, letter.

   b.   A faxed copy was sent, but it was illegible.

8.   Travelers continued to attempt to adjust this claim after this coverage action was filed.

   a.   In their November 4, 2009, letter, Travelers again requested information to determine if Wall's work was at issue in PM's claims against Woodward.

   b.   Travelers' letter stated:

"As we have previously indicated, we are desirous to obtain the information upon which you rely as the basis for your assertions. Yet, until such time as we are provided with this information, we remain in determination of any obligation owed to Woodward per your demands.

\* \* \* \* \*

We remain in investigation of this matter and again respectfully request that you provide any information available, which supports

---

[30] Commercial General Liability Coverage Form, CG 00 01 10 01, Page 10 of 16.

16

> any allegations that the alleged damages are the responsibility of our policyholder, T.S."[31]

9. Information previously requested by Travelers regarding Wall's work being at issue in PM's claims against Woodward was provided to Travelers by Woodward November 18, 2009.[32]

10. The Arbitration Proceeding concluded December 11, 2009.

11. Travelers, in a timely manner and in the custom and practice of the insurance industry, provided to Woodward:

    a. Their analysis of the requirements of the policy for additional insured status and coverage to apply.

    b. Their specific reasons, supported by the policy language, for their coverage position.

    c. What substantiating documentation would be necessary to provide a coverage determination.

    d. Their continuing investigation of the issues.

    e. Their continued efforts to seek resolution of the coverage issues.

R. Bryan Tilden
CPCU, CLU, ARM, ALCM, ChFC, CIC

---

[31] Travelers' November 4, 2009, Letter, Page 2.
[32] Email from Brian Kimball (Brunini, Grantham, Grower & Hewes) to Doug Morgan (Carroll Warren & Parker) dated November 18, 2009.

*Curriculum Vitae*
*of*
**R. Bryan Tilden**
526 Red Gate Road
Pittsboro, North Carolina 27312-7934
*Office:* 919.542.1042 • *Fax:* 919.542.6255 • *E-mail:* tilden@mindspring.com

Exhibit "A"

| | |
|---|---|
| **EDUCATION:** | **Senior Claim Law Associate**, 2008<br>AMERICAN EDUCATIONAL INSTITUTE, INC.<br>Basking Ridge, New Jersey |
| | **Chartered Financial Consultant**, 1983<br>THE AMERICAN COLLEGE<br>Bryn Mawr, Pennsylvania |
| | **Associate in Loss Control Management**, 1983<br>INSURANCE INSTITUTE OF AMERICA<br>Malvern, Pennsylvania |
| | **Associate in Risk Management**, 1982<br>INSURANCE INSTITUTE OF AMERICA<br>Malvern, Pennsylvania |
| | **Chartered Life Underwriter**, 1982<br>THE AMERICAN COLLEGE<br>Bryn Mawr, Pennsylvania |
| | **Chartered Property Casualty Underwriter**, 1980<br>THE AMERICAN INSTITUTE FOR PROPERTY AND LIABILITY<br>UNDERWRITERS<br>Malvern, Pennsylvania |
| | **Certified Insurance Counselor**, 1978<br>SOCIETY OF CERTIFIED INSURANCE COUNSELORS<br>Austin, Texas |
| **HONORS/ACTIVITIES:** | Continuing Professional Development, Society of Chartered Property<br>Casualty Underwriters, 2008 - 2010<br>Ernest F. Young Education Award, 1988<br>Grading Panel Member, The American Institute for Property and<br>Liability Underwriters<br>Grading Panel Member, Insurance Institute of America<br>National Faculty Member, Society of Certified Insurance Counselors<br>North Carolina Independent Agent of the Year, 1989<br>Frequent contributor the *The John Liner Letter*<br>Reviewer, various CPCU and Insurance Institute textbooks |
| **MEMBERSHIPS:** | International Association of Arson Investigators<br>Society of Certified Insurance Counselors<br>Society of Chartered Property Casualty Underwriters<br>Society of Claims Law Associates<br>Society of Financial Service Professionals |

*R. BRYAN TILDEN*          *PAGE 2*

**LICENSES:**          Property and Liability Agent, North Carolina, New Jersey

Life and Heath Agent, North Carolina, New Jersey

Medicare Supplement and Long Term Care Agent, North Carolina

**EXPERIENCE:**          April 1997 to Present
**Training and Consulting**
Tilden & Associates
Pittsboro, North Carolina

September 1995 to March 1997
**Director of Technical Affairs**
Independent Insurance Agents of North Carolina, Inc.
Raleigh, North Carolina

March 1990 to August 1995
**Director of Education**
Independent Insurance Agents of North Carolina, Inc.
Raleigh, North Carolina

September 1983 to March 1990
**Account Executive**
Chapel Hill Insurance Agency, Inc.
Chapel Hill, North Carolina

September 1979 to July 1983
**Vice President**
Thomas Rutherfoord, Inc.
Roanoke, Virginia

December 1978 to September 1979
**Account Executive**
Marsh & McLennan, Inc.
Washington, DC

July 1974 to December 1978
**Account Executive**
Herb Holland Company, Inc.
Chapel Hill, North Carolina

**PUBLICATIONS:**          The CPCU Society. "A Guide to the CGL Aggregate Limits",
http://www.cpcusociety.org/learning/campus/how.shtml , 1999

The CPCU Society, "A Guide to the Motor Carrier Act",
http://www.cpcusociety.org/learning/campus/how.shtml. 1999

The CPCU Society, "A Guide to Value Reporting Form",
http://www.cpcusociety.org/learning/campus/how.shtml. 1999

R. Bryan Tilden, *1999 Business Auto Policy, Changes and Issues*
(Albany: Professional Insurance Agents, 1999)

*R. BRYAN TILDEN*                    *PAGE 3*

----, *2000 Commercial Property Changes* (Malvern: The CPCU Society, 2000)

----, *2000 Homeowners Policy Changes* (Malvern: The CPCU Society, 2000)

----, *2001 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2001)

----, *2001 Business Automobile Policy Changes* (Pittsboro, NC: Tilden and Associates, 2001)

----, *2002 Commercial Property Changes* (Malvern: The CPCU Society, 2002)

----, *2004 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2004)

----, *2007 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2007)

---- *2008 Commercial Property Changes* (Malvern: The CPCU Society, 2008)

----, *Additional Insured* (Austin: Society of Certified Insurance Counselors, Inc., 1996, 2005; Malvern: The CPCU Society, 1999, 2001, 2004, 2005)

----, *Advanced Business Income* (Malvern: The CPCU Society, 1990 – 2010)

----, *Advanced Inland Marine* (Malvern: The CPCU Society, 2000)

----, *Advanced Pollution Liability* (Malvern: The CPCU Society, 1999)

----, *Arson and the Insurance Contract* (Austin: Society of Certified Insurance Counselors, Inc., 1998, 2004)

----, *Bonus Life and Non-Qualified Deferred Compensation Plans* (Pittsboro, NC: Tilden and Associates, 1998)

----, *Budgeting* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1995)

R. Bryan Tilden and Donald Malecki, *Builders Risk, Wrap-Ups and Course of Construction* (Malvern. The CPCU Society, 2006)

R, Bryan Tilden, *Business Automobile Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1993, 1994, 1997, 1999, 2002, 2004, 2005, 2006)

----, *Business Owner's Policy* (Austin: Society of Certified Insurance Counselors, Inc., 1990 - 2002)

----, *Claims Handling* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Closing Gaps in Property Insurance* (Malvern: The CPCU Society, 1999, 2007)

----, *Commercial Account, The* (Malvern: The CPCU Society, 1999, 2001, 2005)

----, *Commercial Crime Program* (Austin: Society of Certified Insurance Counselors, Inc., 1988, 1991, 1992, 1999, 2000, 2006; Malvern: The CPCU Society, 2000, 2006)

*R. BRYAN TILDEN*                    *PAGE 4*

----, *Commercial General Liability Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1992, 1994, 1996, 1997, 1998, 1999, 2001, 2004)

----, *Commercial Property Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008)

----, *Commercial Property Causes of Loss Forms* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008)

----, *Contract Bonds* (Pittsboro, NC: Tilden and Associates, 1999)

R. Bryan Tilden and Donald Malecki, *Contractual Risk Transfer* (Malvern. The CPCU Society, 2005)

R. Bryan Tilden, *Director's and Officer's Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1997; 2002 Malvern: The CPCU Society, 1998, 2000, 2002)

----, *Disability Income and Long Term Care Insurance* (Pittsboro, NC: Tilden and Associates, 2006)

----, *Employee Leasing – The New CGL.* Counselor C93 #6 December (1993): 1-4

----, *Employment Related Practices* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Endorsements to the Commercial Property Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008)

----, *Essentials of Legal Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1995)

----, *Essentials of Life Insurance* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1991)

----, *Estate Planning* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Estate Planning Techniques, Gifts, Trusts and Family Limited Partnerships* (Pittsboro, NC: Tilden and Associates, 2000)

R. Bryan Tilden and Donald Malecki, *Evolution of the CGL,* (Malvern. The CPCU Society, 2007)

R. Bryan Tilden, *Excess Liability and Commercial Umbrella Policies* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1995, 1997)

----, *Flood Insurance,* (Austin: Society of Certified Insurance Counselors, Inc., 1998)

----, *Garage Policy* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1993, 1994, 1998, 2006)

----, *Hidden Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1995, 1997, 2000; Malvern: The CPCU Society, 1998, 2004, 2010)

----, *Homeowner's Policy* (Pittsboro, NC: Tilden and Associates, 1998, 2001)

----, *Homeowner's Tricks and Traps* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1993, 1997, 2001)

*R. BRYAN TILDEN*          PAGE 5

----, *How to Determine the Financial Stability of an Insurance Company* Agents Journal Spring (1985) 18 - 19

----, *Human Resources* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1996)

----, *Insurance Fraud* (Pittsboro, NC: Tilden and Associates, 2001)

----, *Insurance Statute and Rules Update, An Agents' Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1991)

----, *Insuring Contractors* (Malvern: The CPCU Society, 1998, 1999)

----, *Insuring Defective Construction* (Malvern: The CPCU Society, 2002; Austin: Society of Certified Insurance Counselors, 2002)

----, *Insuring the E-Commerce Account* (Malvern: The CPCU Society, 2000 – 2010)

----, *Insuring the In Home Business* (Austin: Society of Certified Insurance Counselors, 1998)

----, *Insurance Valuation Problems* (Malvern: The CPCU Society, 1997 – 2002)

----, "It's a Crime Not to Insure! Use New Crime Forms for the Best Coverage," *Resources* (The National Alliance for Insurance Education & Research), (Spring 2001), pp. 10-13.

----, *Law and the Life Insurance Contract* (Pittsboro, NC: Tilden and Associates, 2002)

----, *Leased Properties Exposures* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1997, 2005; Malvern: The CPCU Society, 1998, 2001, 2005)

----, *Liability Issues and Solutions* (Austin: Society of Certified Insurance Counselors, Inc., 1998)

R. Bryan Tilden and Donald Malecki, *Malecki and Tilden on the CGL,* (Malvern. The CPCU Society, 2003, 2004, 2005)

R. Bryan Tilden, *Medicare Supplement and Long Term Care* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1991, 1992)

----, *Mergers, Acquisitions and Joint Ventures* (Malvern: The CPCU Society, 2001; Austin: Society of Certified Insurance Counselors, Inc., 2002)

----, *More Personal Lines Questions and Answers* (Pittsboro, NC: Tilden and Associates, 1997)

----, *N.C. Insurance Statutes and Rules Update, An Agents' Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1992)

----, *Personal Auto Policy* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1990, 1993)

----, *Personal Auto Policy* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Personal Lines Questions and Answers* (Malvern: The CPCU Society, 1997, 1998)

*R. BRYAN TILDEN*                    *PAGE 6*

----, *Personal Lines, Troublesome Problem Areas* (Indianapolis: Independent Insurance Agents of Indiana, 1997, 1998)

----, *Pollution Liability Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1998)

----, *Pollution and Environmental Liability Coverages* (Malvern: The CPCU Society, 1999)

R. Bryan Tilden and John P. Young, *Pre-Licensing Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1988, 1993)

R. Bryan Tilden, *Professional Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1994, 1996, 1998)

----, *Problems and Solutions in Buy-Sell Agreements* (Pittsboro, NC: Tilden and Associates, 1998).

----, *Products and Completed Operations* (Malvern: The CPCU Society, 1999)

----, *Properly Insuring Churches, Clubs, Civic Groups and Other Not-For-Profit Organizations* (Austin: Society of Certified Insurance Counselors, Inc., 1991, 1998, 2001)

----, *Property & Liability Innovations and Solutions* (Austin: Society of Certified Insurance Counselors, Inc., 1998, 1999, 2001)

----, "Puzzled About Commercial Auto?" *Resources* (The National Alliance for Insurance Education & Research), (Fall/Winter 2001), pp. 8-9.

----, *Rental Car Exposures and Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1988, 1990, 1992, 1999)

----, *Shared Ownership of Property* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1990, 2001)

----, *Small Employer Group Benefits* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1992)

----, *Split Dollar Plans* (Pittsboro, NC: Tilden and Associates, 1998)

----, *Time Element Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1996, 2001, 2008)

----, *Tips, Tricks and Traps of the CGL* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1998, 1999; Malvern: The CPCU Society, 2000)

----, *Toxic Mold, Where Is The Coverage?* (Malvern: The CPCU Society, 2003, 2004, 2008, 2010)

----, *Umbrella and Excess Liability* (Malvern, The CPCU Society, 2004)

----, *Underwriting Workers Compensation* (Pittsboro, NC: Tilden and Associates, 2003)

----, *Utilizing the New Commercial Coverages* (Albany: Professional Insurance Agents, 2003)

----, *Will the Policy Pay for Rebuilding?* <u>Professional Agent</u> February 1998: 24 - 27

*R. BRYAN TILDEN*                    *PAGE 7*

----, *Workers' Compensation* (Austin: Society of Certified Insurance
Counselors, Inc., 1990, 1992, 1997)

----, *Workers' Compensation: Treating the Exposure* (Malvern: The
CPCU Society, 2000)

----, *Workers' Compensation: Underwriting* (Malvern: The CPCU
Society, 2000)

**CASES PAST 4 YEARS:**   *Lumbermens Mutual Casualty Company vs. First Insurance Services,*
*Inc.,* 5:04-CV-580-H(2), United States District Court for the Eastern
District of North Carolina, Western Division.

*Bryant vs. Country Life Insurance Company,* 04-2-36072-2 SEA,
Superior Court of King County, Washington.

*Cargotec, Inc. vs. Westchester Fire Insurance Company, Twin City*
*Fire Insurance Company and The Hylant Group, Inc.,* CI01-2313
Court of Common Pleas of Lucas County, Ohio.

*Vallentine Cotton Company, LLC vs. Columbia Insurance Company*
*and Carolina Insurance Service, Inc.,* 5 05 CV 01127 MBS, United
States District Court for the District Of South Carolina, Orangeburg
Division.

*Lincoln General Ins. Co. vs. National Surety Services, Inc.,*
1:05cv282, United States District Court, Western District of North
Carolina.

*Badhiwala vs. Alea London, Ltd., TAPCO Underwriters, Inc., C&D*
*Insurance Services, Inc., Creative Insurance Solutions, Inc. & Robert*
*Burns,* 05 CVS 0974, Wake County Superior Court, North Carolina.

*Irwin Contracting, Inc., Inc. vs. Pacific Insurance Company, Ltd.,*
8:05-CV-2085, United States District Court for the Middle District of
Florida, Tampa Division.

*Billy R. Johnson, et al, vs. Underwriters at Lloyds, London, BB&T*
*Insurance Services, et al,* 05 CVS 2018, Gaston County Superior
Court, North Carolina.

*John A. Francis, et al, vs. Rufus Walston, The Clement Companies, et*
*al,* 04 CVS 67, Chowan County Superior Court, North Carolina.

*Meridian Products, Inc. vs. William T. Sheveland and W. T.*
*Sheveland & Associates, Inc.,* CI-00-00629, Court of Common Pleas
of Lancaster County, Pennsylvania.

*Stephen B. Panus, et al v. Lexington Insurance Company, et al,* 2003-
18007, Civil District Court for the Parish of Orleans, Louisiana.

*Datamark v. Furr, et al,* 06 CVS 1825, Randolph County Superior
Court, North Carolina.

*R. BRYAN TILDEN*          PAGE 8

*Lee Ann Halstead v. Equitable Production, et al, v. TM Services, Inc., and Westfield Insurance Company,* 04-C-218, Circuit Court of Boone County, West Virginia.

*Burton A. Gellman, et al, v. The Cincinnati Insurance Company,* 3-04-CV-234-MU, United States District Court, Eastern District of North Carolina, Western District, Charlotte Division.

*Korbel v. Lexington Insurance Company,* 06-4429-N-4, United States District Court for the Eastern District of Louisiana.

*Hunter Engineering Company, Inc. and Hunter Service Centers, Inc. v. Lexington Insurance Company,* 4:06-CV-1536-JCH, United States District Court for the Eastern District of Missouri, Eastern Division.

*Amatulli & Sons, LLC v. Great Northern Insurance Company,* 3:06-CV-206, United States District Court for the Western District of North Carolina, Charlotte Division.

*New Orleans Cold Storage & Warehouse Company, LTD., et al v. Lumbermen's Underwriting Alliance, et al,* 069102, Civil District Court, Parish of Orleans, Louisiana.

*Pure Country, Inc. v. The Travelers Indemnity Company of America,* 1:07-cv-295, United States District Court for the Western District of North Carolina, Asheville Division.

*Lexington Insurance Company, et al v. Port Arthur Independent School District,* 1:06-cv-777, United States District Court for the Eastern District of Texas, Beaumont Division.

*State Farm Fire and Casualty Insurance Company v. Calvin Chance Reed, et al,* 7:07-cv-2958-RBH, United States District Court for the District of South Carolina, Spartanburg Division.

*Israel Kopel Amster, et al v. American International Insurance Company et al,* KAC 04-1800 (9026), Commonwealth of Puerto Rico, Court of the First Instance, Judicial Center of San Juan, Upper Courtroom.

*Wyndam New Orleans Canal Place, et al v. Lexington Insurance Company, et al,* 06-3934, Division I, Civil District Court for the Parish of New Orleans, State of Louisiana.

*Denise Renee Reagan, et al v. Nationwide Life Insurance Company,* 04:07-CV-00130, United States District Court, Eastern District of Virginia, Newport News Division.

*Huey & Fong v. The Great Atlantic & Pacific Tea Company & Commonwealth Insurance Company, et al,* 07-1169, United States District Court, Eastern District of Louisiana.

*Alan H. Burroughs v. State Farm Fire & Casualty Company, et al,* 07-CVS-2629, Guilford County Superior Court, North Carolina.

R. BRYAN TILDEN

PAGE 9

*Cascade Fibers of Sanford, LLC.* v. *Erie Insurance Company,* 05-CVS-6692, Wake County Superior Court, North Carolina.

*Southern Insurance Company* v. *Advanced Coatings,* United States District Court, 3:07CV167, Western District of North Carolina.

*SPX* v. *The Insurance Company of the State of Pennsylvania, et al,* 3815, Court of Common Pleas, Philadelphia, Pennsylvania.

*Stewart Enterprises, Inc., et al* v. *RSUI Indemnity Company, Inc.,* 07-4514, United States District Court, Eastern District of Louisiana.

*Tom Hall & Associates, Inc.* v. *Premier Protection Insurance Agency, Inc.,* 06A56528-7, State Court of DeKalb County, Georgia.

*Continental Casualty Co., et al* v. *Deauville Associates, Limited Partnership, et al,* 1:07-cv-01818 (ESH), United States District Court, District of Columbia.

*Foster Wheeler Energia OY* v. *AS Narva Elektrijaamad,* In The Matter Of The Uncitral Arbitration Rules and In The Matter Of The Arbitration Act of 1996 and In The Matter Of An Arbitration, London, England.

*Shawn P. Doyle, et al* v. *Lexington Insurance Company,* 08-4997, Section "A", United States District Court, Eastern District of Louisiana.

*Johnnie Franklin Richards* v. *Greensboro Coliseum* v. *Choice Pool and Spa,* 08-CVS-011169, Guilford County Superior Court, North Carolina.

*LES Realty Trust 'A', et al* v. *Landmark American Insurance Company,* 07-3299 BLS2, Superior Court of Suffolk County, Commonwealth of Massachusetts.

*Certain Underwriters at Lloyd's Severally Subscribing to Policy Number DP359504 and( Lexington Insurance Company)* v. *Tyson Foods, Inc.,* C.A. No. 07C-06-255 (MJB) and related cases, Superior Court of the State of Delaware in and for New Castle County.

*Interstate Manufacturing, Inc.* v. *Harleysville Lake States Insurance Co., et al,* 08-1103, Circuit Court For The County of St. Joseph, Michigan.

*Evanston Insurance Company* v. *G & T Builders, Inc., et al,* 7:09-cv-00022-FL, United States District Court, Eastern District of North Carolina.

**STATE OF MISSISSIPPI**

**COUNTY OF HARRISON**

## AFFIDAVIT OF WALTER KETCHINGS
## AS MANAGING MEMBER OF PASS MARIANNE, LLC

Personally appeared before the undersigned for the state and jurisdiction aforesaid, the within named Walter Ketchings, who first being duly sworn did state under oath as follows:

1.     This affidavit is made on personal knowledge with regard to Pass Marianne, LLC, of which the undersigned Walter Ketchings is the managing member.

2.     Pass Marianne, LLC has recently completed arbitration initiated by Carl E. Woodward, LLC wherein a counter-claim was filed by Pass Marianne, LLC against Woodward.

3.     During the course of this arbitration, Carl E. Woodward, LLC joined various subcontractors one of which was T.S. Wall & Sons, Inc.

4.     Pass Marianne, LLC, at no time alleged any claim against T.S. Wall & Sons, Inc. nor was any money withheld by Pass Marianne, LLC from Carl E. Woodward, LLC due to any act or omission attributable to T.S. Wall & Sons, Inc.

5.     Pass Marianne, LLC did not initiate, sponsor, nor ratify any claim during this arbitration reflecting adversely upon the performance of T. S. Wall & Sons, Inc.

Further sayeth the affiants not.

WALTER KETCHINGS, Managing
Member of Pass Marianne, LLC

5/5/10
DATE

SWORN TO AND SUBSCRIBED before me, a Notary Public, on this the 5th

day of _____May_____, 2010.

_____Lori Smith_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 5817
LORI SMITH
Commission Expires
March 6, 2012
HARRISON COUNTY