## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CARL E. WOODWARD, LLC, and**
**GRAY INSURANCE CO.**                                    **PLAINTIFFS**

**v.**                                    **CAUSE NO. 1:09CV781-HSO-RHW**

**ACCEPTANCE INDEMNITY**
**INSURANCE COMPANY**                                    **DEFENDANT**

### MEMORANDUM OPINION AND ORDER GRANTING IN
### PART AND DENYING IN PART PLAINTIFFS' MOTIONS
### FOR EXTRA-CONTRACTUAL DAMAGES AND INTEREST

**BEFORE THE COURT** are the Motion [366] for Extra-Contractual Damages

and Motion [368] for Interest filed by Plaintiffs.  Acceptance has filed a Response in

opposition to each Motion, and Plaintiffs have filed replies.  Upon reviewing the

submissions of the parties and the applicable law, the Court finds that the Motions

should granted in part and denied in part.

## I.  FACTS AND PROCEDURAL HISTORY

In 2005, Carl E. Woodward, LLC, and Pass Marianne, LLC, entered into a

contract in which Woodward agreed to construct the Pass Marianne Condominiums in

Pass Christian, Mississippi.  Woodward served as the general contractor on the project.

It entered into subcontracts with several entities, including DCM, Inc., which

performed certain concrete work on the project.  In accordance with the terms of the

various subcontracts, each subcontractor listed Woodward as an additional insured on

its respective commercial general liability policy.  DCM, Inc., added Woodward and

Pass Marianne as additional insureds on an Acceptance Indemnity Insurance Company

commercial general liability policy issued to DCM Corporation, LLC.

In 2008, Woodward and Pass Marianne were sued by one of the investors in the Pass Marianne project as a result of alleged construction defects in the condominiums. Pass Marianne filed a cross-claim against Woodward, asserting, among other things, that Woodward had used inferior products, had altered blueprints to cover up construction deficiencies, and had attempted to alter its contract with Pass Marianne after the offices of Woodward and Pass Marianne were destroyed by Hurricane Katrina.

Woodward demanded that Pass Marianne's claims against it be submitted to arbitration.  In the ensuing arbitration, Woodward joined several subcontractors as third-party defendants.  However, the Arbitration Panel denied Woodward's Motion to join DCM, Inc., as a party to the arbitration, due to lack of proper notice.  As a result, DCM, Inc., was not a party to the arbitration, although the proceeding did pertain to several construction deficiencies in the project, including problems with the concrete work performed by DCM, Inc.

Woodward's attorney sent letters to each subcontractor's insurer, demanding that each insurer afford Woodward a defense and indemnity regarding the claims asserted by Pass Marianne.  After Acceptance and the other subcontractors' insurers denied Woodward's request, Woodward and its own insurer, Gray Insurance Company, agreed that Gray would pay one half of the defense costs Woodward incurred during the arbitration, and that Woodward would pay the other half.  The Arbitration Panel ultimately ordered Woodward to pay Pass Marianne $1,640,569.06 in damages, which included $403,348.06 in taxed costs.  The Panel assessed $195,000.00 in damages for

defects in the balconies.  Woodward and Gray took the position that this figure pertained to the work performed by DCM.  Gray paid these damages on Woodward's behalf.

Woodward and Gray then instituted the present litigation against Acceptance and the insurers of other subcontractors, asserting breach of contract and subrogation claims as a result of the insurers' alleged failure to satisfy their defense and indemnity obligations to Woodward.   Woodward and Gray, as Plaintiffs, sought compensatory and punitive damages, prejudgment interest, post-judgment interest, and attorneys' fees.  After the parties concluded the initial discovery phase of this lawsuit, Plaintiffs settled their claims with all of the insurers except for Acceptance.  The parties have stipulated that the collective amount of those settlements was $275,000.00.

Both Woodward and Acceptance filed Motions for Summary Judgment.  At that time, the case was assigned to United States District Judge Louis Guirola, Jr.  In a Memorandum Opinion and Order, Judge Guirola held that Acceptance owed and breached a duty to defend Woodward, and that Acceptance lacked an arguable basis for failing to defend Woodward.  For this reason, Acceptance was not entitled to summary judgment as to Woodward's claim for extra-contractual damages.  Judge Guirola also determined that genuine issues of material fact existed regarding whether Acceptance had a duty to indemnify Woodward and Gray.  Finally, Judge Guirola concluded that Acceptance was entitled to summary judgment regarding Woodward's bad faith claim.

For convenience, and to avoid prejudice and confusion of issues, Judge Guirola

entered an Order severing Gray's indemnity claims from the remaining claims in the case. The parties also entered into a Stipulation, agreeing to a jury trial on the question of the reasonableness and necessity of Woodward's defense fees and costs in the underlying arbitration. The parties agreed that the Court would then determine whether Woodward's defense fees and costs should be allocated among Acceptance and the settling insurers, and whether Woodward was entitled to an award of extra-contractual damages.

The case was subsequently transferred to the undersigned. The Court conducted a jury trial in March 2011. The jury found that Woodward had incurred $393,392.02 in reasonable and necessary attorneys' fees in the arbitration. During the trial, the Court determined that the $403,348.06 in costs taxed to Woodward during the arbitration were covered under the Acceptance policy.

Pursuant to the parties' Stipulation, the Court next held a bench trial in February 2012 on the issue of whether the fees and costs incurred by Woodward and Gray during the arbitration should be allocated among Acceptance and the settling insurers. During this trial, Gray voluntarily dismissed its claim for indemnification under the Acceptance policy. The Court found that Acceptance should be required to pay twenty percent (20%), or $78,678.40, of the $393,392.02 in defense costs and expenses incurred by Woodward in the arbitration, but that Acceptance is not entitled to allocate the taxed costs because the Acceptance policy unambiguously provided that Acceptance would pay all costs taxed against its insured. Following the bench trial, Plaintiffs filed the present Motions, seeking extra-contractual damages and interest.

## II.  DISCUSSION

**A.  Plaintiffs' Motion for Extra-Contractual Damages**

    **1.  Attorneys' Fees**

        **a.  Entitlement to Attorneys' Fees**

"[W]hen an insurance company breaches its contract with an insured but does not do so in a way that is so egregious as to permit the recovery of punitive damages . . . , the insured in some circumstances will have a right to attorneys' fees and other expenses that were reasonably foreseeable." *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 270 (5th Cir. 2008) (citing *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290, 295 (Miss. 1992)).  The Mississippi Supreme Court has held that extra-contractual damages should only be awarded in cases involving the denial of an insurance claim without an arguable reason.  *Veasley*, 610 So. 2d at 295.  Judge Guirola has previously entered a Memorandum Opinion and Order determining that Acceptance did not have an arguable basis for denying a defense to Woodward.  Mem. Opinion & Order, ECF No. 200.

Acceptance argues that neither Woodward nor Gray are entitled to extra-contractual damages, because Gray in essence created Woodward's extra-contractual damages claim by failing to pay for one hundred percent of Woodward's defense costs.  According to Acceptance, since Gray defended Woodward pursuant to a reservation of rights, it was required to provide Woodward with independent counsel at Gray's expense pursuant to *Moeller v. Amer. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062 (Miss. 1996).  Woodward could have sued Gray in this litigation for that failure, but it chose

not to do so.  Woodward is the master of its Complaint, and it was entitled to determine which parties to sue.

The Court also disagrees with Acceptance's argument that there would have been no extra-contractual damages claim against it had Gray fully defended Woodward and then filed a lawsuit against Acceptance based strictly on the doctrine of subrogation.

> Subrogation is the substitution of one person in the place of another, whether as a creditor or as the possessor of any rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and to its rights, remedies, or securities.

*Ellis v. Powe*, 645 So. 2d 947, 951 (Miss. 1994).  When an insurer pays a loss on behalf of an insured, the insurer "acquires the right to be subrogated pro tanto to *any and all* rights which the insured may have against, not only the principal, but also third persons whose wrongful act or neglect caused the loss." *Oxford Prod. Credit Ass'n v. Bank of Oxford*, 16 So. 2d 384, 388 (Miss. 1944) (emphasis added). The Mississippi Supreme Court has equated the right of subrogation with an assignment of rights from the insured to the insurer, holding that the insurer "stands in the shoes of [its insured]." *St. Paul Prop. & Liab. Ins. Co. v. Nance*, 577 So. 2d 1238, 1241 (Miss. 1991). "[Subrogation] is a creature of equity, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in equity and good conscience, ought to pay it." *Oxford Prod.*, 16 So. 2d at 388.  It is not available unless the plaintiff demonstrates a "superior equity." *Id.* at 390.  Thus, if the insurer seeking subrogation was equally responsible for the loss as the party against whom subrogation is sought, the insurer

-6-

has not demonstrated superior equity and is not entitled to subrogation.  *See id.*

In the present case, Acceptance had a duty to defend Woodward with regard to liability arising out of DCM's ongoing operations performed for Woodward.  *See* Pls.' Mot., Ex. 2 at 34, ECF No. 143-2.  It is possible that Gray also had a duty to defend Woodward, since separate allegations were made against Woodward in the arbitration which were not related in any way to the various subcontractors' work on the project. The Subcontract Agreement between Woodward and DCM, Inc., provided that DCM's insurance would be considered primary to any other insurance maintained by Woodward.  Subcontract 11, ECF No. 167-2.  DCM also agreed to defend, indemnify, and hold Woodward harmless from and against any claims arising out of DCM's work on the Pass Marianne project.  *Id.* at 10.  When a subcontractor agrees to indemnify a general contractor as to certain claims, the subcontractor's insurance policy is considered the primary insurance policy concerning those claims.  *Chubb Ins. Co. of Canada v. Mid-Continent Cas. Co.*, 982 F. Supp. 435, 437-38 (S.D. Miss. 1997).  Based on the foregoing, Gray has demonstrated superior equity with regard to the portion of the arbitration defense fees that were allocated to Acceptance at the bench trial held in February 2012.

Acceptance's reliance on *Windham at Carmel Mountain Ranch Ass'n v. Superior Court*, 135 Cal. Rptr. 2d 834 (Cal. Ct. App. 2003), and *Allstate Insurance Co. v. Watson*, 876 S.W.2d 145 (Tex. 1994), in support of its argument that Gray is not entitled to attorneys' fees and expenses is misplaced.  The *Windham* decision does not concern subrogation or insurance.  It merely holds that someone who is not a party to a

contract is not entitled to recover extra-contractual damages. *Windham*, 135 Cal. Rptr. at 841-42.

In *Watson*, the Texas Supreme Court held that a person injured in an automobile accident was not entitled to recover on an unfair claims practices theory against the at-fault party's insurer, since such damages are extra-contractual in nature. *Watson*, 876 S.W.2d at 149. The court's fear was that allowing such a right to a third party would infringe on or conflict with the insurer's duties to its insured. *Id.* at 150. *Watson* is distinguishable from the present case, because it involved a third party injured by an insured, while the present case involves an insurer seeking subrogation. A third party injured by an insured's conduct acquires it rights pursuant to his third party beneficiary status. *See id.* The Court has been directed to no authority which provides that an injured third party steps into the shoes of, or acquires, an insured's rights under an insurance policy, absent an assignment of rights from the insured to the third party. However, under Mississippi law, an insurer that pays on behalf of its insured a loss that another should have paid acquires all of the rights of its insured. Permitting an insurer to recover extra-contractual damages pursuant to the doctrine of subrogation does not compromise the rights of the insured. In sum, the concerns underlying the Texas Supreme Court's decision in *Watson* are not present here. *See id.* The Court is of the view that, as a result of its decision to pay fees that should have been paid by Acceptance, Gray stands in the shoes of Woodward in this lawsuit and assumes all of Woodward's rights, including the right to recover extra-contractual damages.

Acceptance next argues that the attorneys' fees and costs claimed by Woodward were not reasonably foreseeable.  It maintains that it could not have reasonably foreseen that "Gray Insurance Company would completely disregard its *Moeller* obligation and strike a self-serving deal with Woodward, whereby Woodward and Gray Insurance Company would join forces to seek extra-contractual damages against Acceptance." (Def.'s Mem. 7-8, ECF No. 372).  The Court disagrees.  Since Acceptance refused to defend Woodward in the underlying arbitration, the attorneys' fees and costs incurred while prosecuting this case against Acceptance, regardless of who incurred them, were reasonably foreseeable to Acceptance.  Therefore, the Court finds that extra-contractual damages should be awarded.  The Court now turns to determining the amount of attorneys' fees to which Woodward and Gray are entitled.

**b. Calculation of Attorneys' Fees**

Where a federal court's jurisdiction is based on diversity of citizenship, state law governs the award of attorneys' fees.  *Tex. Commerce Bank Nat'l Assoc. v. Capital Bancshares, Inc.*, 907 F.2d 1571, 1575 (5th Cir. 1990).  When calculating attorneys' fees, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.  *Tupelo Redevelopment Agency v. Gray Corp., Inc.*, 972 So. 2d 495, 521-22 (Miss. 2007).  It then considers whether the lodestar figure should be adjusted upward or downward depending upon the circumstances of the case.  *See id.*  In making this assessment, the Mississippi Supreme Court has held that courts should look to the guidelines set forth in Rule 1.5(a) of the Mississippi Rules of Professional Conduct and

the similar factors discussed in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

*Tupelo Redevelopment*, 972 So. 2d at 521.  These factors are nearly identical to those

set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir.

1974).  The Mississippi Rules of Professional Conduct factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

Miss. R. Prof. Conduct 1.5(a).  The *McKee* factors are:

> the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.

*McKee*, 418 So. 2d at 767.

Plaintiffs seek a total of $523,403.79 in attorneys' fees related to this litigation.

They have not asked the Court to divide recoverable costs amongst them; therefore, the

Court assumes that Gray and Woodward will decide this amongst themselves.  The law

firm of Brunini, Grantham, Grower & Hewes in Jackson, Mississippi, began its

representation of both Woodward and Gray on August 20, 2009.  Trial Ex. P-12.

Plaintiffs request an award of fees for work performed by attorneys Samuel C. Kelly,

Brian C. Kimball, and Karen E. Howell of the Brunini firm, who appeared as counsel of record on behalf of Plaintiffs.  Plaintiffs also seek attorneys' fees billed by Ron A. Yarbrough of the Brunini firm.   Mr. Yarbrough represented Woodward in the underlying arbitration, but never made an appearance as counsel in the present litigation.  He testified at both trials as a fact witness and consulted with Mr. Kelly, Mr. Kimball, and Ms. Howell throughout this litigation.   Because Plaintiffs both believed that a conflict of interest might arise between Gray and Woodward, the Brunini firm terminated its initial representation of Gray on March 24, 2010, but it continued to represent Woodward.  3/24/2010 Text-Only Order.  The Fowler Rodriguez Valdes-Fauli firm in New Orleans, Louisiana, undertook representation of Gray at that time.  *Id.*  Attorneys E. Stuart Ponder, Mat M. Gray, and Todd G. Crawford of the Fowler firm entered appearances on behalf of Gray.  The feared conflict of interest never materialized, and the Brunini firm resumed its representation of Gray on July 14, 2011.  Notices of Appearance, ECF Nos. 286, 287, 288.

In preparing their submissions in connection with the present Motions, Plaintiffs' attorneys reviewed their bills and withdrew entries which involved work that was either related to other Defendants to this lawsuit or pertained to Gray's indemnity claim.  Trial Ex. 13, Schedule 2(a)(2).  Acceptance submitted a chart to the Court which identifies additional reductions it seeks.  Def.'s Resp. Ex. J, ECF No. 371-10.  The Court has further conducted an independent review of all of the bills and considered the relevant factors under Mississippi law.

In this litigation, Mr. Kelly has charged a rate of $275.00 per hour, and Mr.

Kimball has charged $200.00 per hour.  Ms. Howell charged $170.00 per hour, while Mr. Yarbrough charged $290.00.  Mr. Gray billed at a rate of $225.00 per hour, and Mr. Ponder billed at $190.00.  Acceptance does not object to the rates charged by Mr. Gray, Mr. Ponder, Mr. Kimball, and Ms. Howell.  Having considered the requisite factors, the Court agrees that the rates charged by these attorneys were reasonable, given their experience and the work they performed.

Acceptance takes issue with the rates charged by Mr. Kelly and Mr. Yarbrough, arguing that Plaintiffs have not cited any cases from the Southern District of Mississippi which support the hourly rates sought by these two attorneys.  However, this Court recently approved a billable rate of $375.00 per hour for an attorney who had over forty-one years experience, and a billable rate of $300.00 per hour for an attorney who had twenty-three years experience.  *Penthouse Owners Assoc., Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07cv568-HSO-RHW, 2011 WL 6699447 (S.D. Miss. Dec. 21, 2011).  Mr. Yarbrough has thirty-one years of experience, and Mr. Kelly has twenty-three years of experience.  Given the experience of these attorneys and the complexities presented by this case, the Court finds that $290.00 per hour is a reasonable rate for Mr. Yarbrough and that $275.00 per hour is a reasonable rate for Mr. Kelly.

The Brunini firm utilized four paralegals – Marena S. Gray, Mary K. Cooper, Tammy T. Barnett, and Jennifer Farmer – who each billed at a rate of $110.00 per hour.  Paralegals Steven Jones, Cheryl Shilling, and Auriel F. Toney of the Fowler firm also performed work on the case.  Mr. Jones billed at a rate of $90.00, while Ms.

Shilling and Ms. Toney billed at $110.00. Acceptance has lodged no objection to the rates charged by the Brunini and Fowler paralegals who worked on the case. The Court finds that a reasonable rate for the paralegals is $90.00 per hour. *See Penthouse*, 2011 WL 66999447 at *11. The rates charged by Ms. Toney, Ms. Gray, Ms. Cooper, Ms. Farmer, and Ms. Barnett are reduced to $90.00. Ms. Toney billed 3.6 hours; Ms. Gray billed 128.5 hours; Ms. Cooper billed 15.5 hours; Ms. Farmer billed 12.5 hours; and Ms. Barnett billed 10.75 hours on the case. The prosecution costs will be reduced by $72.00 for Ms. Toney's work, $2,515.00 for Ms. Gray's work[1], $310.00 for Ms. Cooper's work, $215.00 for Ms. Barnett's work, and $250.00 for Ms. Farmer's work. The total reduction related to the paralegals' work is $3,362.00.

Acceptance argues that it should only be responsible for one-fifth of the time entries that were related to all five of the Defendants to this lawsuit, such as the time entries pertaining to the drafting of the Complaint and attorney conferences. However, Plaintiffs would have been required to perform this work regardless of whether there were one or five Defendants to this lawsuit. Plaintiffs' claims against all of the Defendant insurers arose out of a "common core of facts," and involved the same legal theories under Mississippi insurance law. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). Therefore, Acceptance is not entitled to a one-fifth allocation for those time entries that pertain to Acceptance as well as the other

---

[1] Plaintiffs made an error when calculating Ms. Gray's fees on page 18 of their Memorandum [367], and actually requested a figure that was $55.00 lower than the amount to which they are entitled, assuming a $110.00 per hour rate. The Court took this error into consideration when calculating Ms. Gray's fees.

Defendants.

For similar reasons, Acceptance is not entitled to a deduction due to the fact that it was successful with regard to its allocation defense and its Motion for Summary Judgment concerning Plaintiffs' punitive damages claims. The Court cannot separate the time spent litigating the punitive damages and allocation issues with any certainty, and Acceptance has not proposed a reliable method for doing so. As for the voluntary dismissal of Gray's indemnity claim, Plaintiffs as well as the Court have omitted all fees related to the indemnity claim.

The Court also rejects Acceptance's arguments that billing entries concerning correspondence with Defendant Travelers' attorney concerning the scheduling of the mediation held in this matter should be deducted. Although at first blush these entries appear to solely concern Travelers, the Court finds that the selection of a mediator and the time spent scheduling the mediation related to all Defendants, including Acceptance. *See, e.g.,* Kimball 05/10/10 & 5/11/10 entries, Trial Ex. 12.

Another of Acceptance's objections arose out of an apparent typographical error in Plaintiffs' voluntary reductions. Plaintiffs attempted to voluntarily deduct 0.5 hours of time billed by Mr. Kimball on both November 4, 2009, and November 5, 2009, but the dates were listed in Plaintiffs' schedule of reductions as October 4, 2009, and October 5, 2009. Trial Ex. 13, Schedule 2(a)(2). This typographical error does not necessitate a further reduction in the fees sought. Nor can the Court agree with Acceptance's apparent argument that all of the inter-office conferences conducted by Plaintiffs' counsel were duplicative. The Court has reviewed these entries and finds

-14-

that they were reasonable and necessary.

Plaintiffs are not entitled to recover for time that was spent solely on pursuing claims against other parties. *See La. Power & Light Co.*, 50 F.3d at 327. The Court has identified work that was devoted solely to Plaintiffs' claims against other Defendants that was not sufficiently reduced. The chart below reflects additional reductions to Plaintiffs' bills beyond those which they have made voluntarily. In some cases, the attorney did not deduct a sufficient amount of time for the entry at issue. *See, e.g.*, 10/7/09 & 11/10/09 BLK entries, Trial Ex. 12. In addition, Plaintiffs attempted to bill Acceptance for the preparation of summary judgment motions and responses that could not have pertained to Acceptance, since the Motions for Summary Judgment [167, 169, 173] concerning Acceptance were not filed until October 29, 2010. *See, e.g.*, 9/8/10 & 9/9/10 BLK entries, Trial Ex. 12.

The Court will therefore reduce the attorneys' fees award by the total amount of the entries described in the chart below:

| Date | Attorney | Rate | Time | Reduction |
|---------|----------|----------|------|-----------|
| 10/7/09 | Kimball | $200.00 | 0.5 | $100.00 |
| 10/9/09 | Kimball | $200.00 | 0.25 | $50.00 |
| 10/23/09 | Kimball | $200.00 | 2.0 | $400.00 |
| 10/26/09 | Kimball | $200.00 | 0.75 | $150.00 |
| 11/10/09 | Kimball | $200.00 | 0.75 | $150.00 |
| 11/11/09 | Kimball | $200.00 | 0.25 | $50.00 |
| 11/18/09 | Kimball | $200.00 | 0.25 | $50.00 |

| | | | | |
|---|---|---|---|---|
| 1/11/10[2] | Kimball | $200.00 | 0.25 | $50.00 |
| 4/22/10 | Mat Gray | $225.00 | 1.2 | $270.00 |
| 7/30/10 | Mat Gray | $225.00 | 0.8 | $180.00 |
| 8/19/10 | Kimball | $200.00 | 0.25 | $50.00 |
| 9/8/10 | Kimball | $200.00 | 3.75 | $750.00 |
| 9/9/10 | Kimball | $200.00 | 6.0 | $1200.00 |
| 9/9/10 | Marena Gray | $90.00 | 1.5 | $135.00 |
| 9/11/10 | Kimball | $200.00 | 1.5 | $300.00 |
| 9/12/10 | Kimball | $200.00 | 1.5 | $300.00 |
| 9/13/10 | Kelly | $275.00 | 0.5 | $137.50 |
| 9/13/10 | Kimball | $200.00 | 2.5 | $500.00 |
| 9/16/10 | Mat Gray | $225.00 | 0.3 | $67.50 |
| 9/22/10 | Mat Gray | $225.00 | 1.5 | $337.50 |
| 9/23/10 | Mat Gray | $225.00 | 0.3 | $67.50 |
| 9/27/10 | Mat Gray | $225.00 | 2.0 | $450.00 |
| 9/28/10 | Mat Gray | $225.00 | 1.0 | $225.00 |
| 9/29/10 | Mat Gray | $225.00 | 3.0 | $675.00 |
| 10/5/10 | Mat Gray | $225.00 | 1.0 | $225.00 |
| 10/7/10 | Kimball | $200.00 | 1.0 | $200.00 |
| 10/7/10 | Mat Gray | $225.00 | 1.0 | $225.00 |

---

[2] This 1.0 entry was reduced by 0.75, because a majority of the work concerned another Defendant, Dixie Specialty.  Plaintiffs have not demonstrated that Acceptance should be liable for work related to Dixie Specialty.

| | | | | |
|---|---|---|---|---|
| 10/22/10[3] | Kimball | $200.00 | 0.5 | $100.00 |
| 11/11/10 | Kimball | $200.00 | 0.5 | $100.00 |
| 11/18/10 | Kimball | $200.00 | 0.5 | $100.00 |
| 12/7/10 | Kimball | $200.00 | 0.25 | $50.00 |
| 12/7/10 | Mat Gray | $225.00 | 0.4 | $90.00 |
| 12/9/10 | Mat Gray | $225.00 | 0.3 | $67.50 |
| 1/7/11 | Howell | $170.00 | 0.75 | $127.50 |
| 1/28/11[4] | Mat Gray | $225.00 | 0.3 | $67.50 |
| 1/31/11 | Mat Gray | $225.00 | 0.2 | $45.00 |
| 2/3/11 | Kimball | $200.00 | 0.25 | $50.00 |
| 2/15/11 | Kimball | $200.00 | 0.25 | $50.00 |
| 2/16/11 | Kimball | $200.00 | 0.25 | $50.00 |
| 3/4/11 | Kimball | $200.00 | 0.25 | $200.00 |
| 4/1/11 | Kimball | $200.00 | 0.25 | $50.00 |
| 4/8/11 | Mat Gray | $225.00 | 0.4 | $90.00 |
| | | | **Total:** | **$8532.50** |

Acceptance also contends that certain entries which were redacted should be eliminated.  The Court agrees that the following entries are so heavily redacted that the Court cannot determine whether the tasks performed by the attorneys were

---

[3] This 2.0 entry was voluntarily reduced by 1.0, but the only task included in this entry related to Acceptance was the drafting of a motion for extension of time, which should take less than one-half hour to complete.  Therefore, this entry was reduced by an additional one-half hour.

[4] There were multiple entries for 0.3 on this date for Mat Gray.  The entry deducted by the Court concerns a conference with Ed Taylor, counsel for Defendant Zurich.

reasonable and necessary or whether the entries were related to other Defendants or Gray's indemnity claim:

| Date | Attorney | Rate | Time | Reduction |
|------|----------|------|------|-----------|
| 1/30/10 | Kimball | $200.00 | 2.0 | $400.00 |
| 4/4/11 | Kelly | $275.00 | 0.25 | $68.75 |
| 4/5/11 | Kimball | $200.00 | 3.75 | $750.00 |
| 4/7/11 | Kimball | $200.00 | 3.5 | $700.00 |
| 4/11/11 | Kimball | $200.00 | 0.5 | $100.00 |
| 6/15/2011 | Howell | $170.00 | 2.25 | $382.50 |
| | | | **Total:** | **$2401.25** |

The following entries are related to Gray's indemnity claim, and have been omitted by the Court:

| Date | Attorney | Rate | Time | Reduction |
|------|----------|------|------|-----------|
| 10/4/11 | Howell | $170.00 | 1.5 | $255.00 |
| 10/5/11 | Howell | $170.00 | 0.5 | $85.00 |
| 10/28/11[5] | Kelly | $275.00 | 0.25 | $68.75 |
| 5/4/11 | Ponder | $190.00 | 1.0 | $190.00 |
| 5/10/11 | Ponder | $190.00 | 1.0 | $190.00 |
| | | | Total: | **$788.75** |

The Court also finds that the amount of time spent on certain entries was greater than necessary.   On December 29, 2009, December 30, 2009, and January 4,

---

[5] This entry appears out of order on the bills submitted by the Brunini firm.  The entry is located on the page featuring a bates number of TRIAL 000220 of Trial Exhibit 12.

2010, 3.5 hours were billed at an hourly rate of $200.00 for preparation of a confidential settlement memorandum. The Court finds that these entries should be reduced by two hours, for a reduction of $400.00. On September 3 and 6, 2010, nine hours were billed at an hourly rate of $170.00 for research regarding the requirements for expert designations and whether expert testimony is admissible concerning issues of law. These entries should be reduced by a total of five hours, which results in a reduction of $850.00.

The Court further finds that all of Mr. Yarbrough's time should be excluded from the award. He never made an appearance as counsel of record in the case as Woodward's attorney, nor could he have since he was a vital fact witness. He also did not provide any expert testimony. Plaintiffs' decision to voluntarily pay for time Mr. Yarbrough spent while serving as a fact witness in this litigation was not reasonably foreseeable to Acceptance at the time it denied Woodward's request for a defense. As a result, the Court finds that the prosecution costs sought by Plaintiffs should be further reduced by $28,347.50, the amount of Mr. Yarbrough's fees.

On the following occasions, the Brunini firm charged for time spent studying documents while answering correspondence received from its client, Gray, and sending documents to Gray. Plaintiffs have not demonstrated how Acceptance could be liable for this expense. Moreover, the entries appear duplicative or otherwise unrelated to work performed in an effort to prosecute the claims against Acceptance or the other Defendants:

| Date | Attorney | Rate | Time | Reduction |
|---|---|---|---|---|
| 10/29/09 | Kimball | $200.00 | 1.25 | $250.00 |
| 10/29/09 | Kimball | $200.00 | 1.25 | $250.00 |
| 10/30/09 | Kimball | $200.00 | 1.75 | $350.00 |
| 11/2/09 | Kelly | $275.00 | 0.25 | $68.75 |
| 11/2/09[6] | Kimball | $200.00 | 0.75 | $150.00 |
| 2/9/10 | Kimball | $200.00 | 1.0 | $200.00 |
| | | | Total: | **$1268.75** |

In summary, the total prosecution costs are reduced as follows:

| | |
|---|---|
| Total Attorneys' Fees Sought by Plaintiffs | $523,403.79 |
| Reduction due to Paralegal Rates | $3362.00 |
| Reduction for Entries Related Solely to Other Defendants | $8532.50 |
| Reduction due to Redacted Entries | $2401.25 |
| Reduction for Entries Related Solely to the Indemnity Claim | $788.75 |
| Reduction for Excessive Entries | $1250.00 |
| Reduction for Yarbrough's Time | $28,347.50 |
| Reduction for Gray's Inquiries to its Attorneys | $1268.75 |
| **Lodestar Reflecting Reduced Attorneys' Fees** | **$477,453.04** |

The Court has reviewed the factors announced by the Mississippi Supreme

---

[6] The majority of this entry pertained to the study of documents and drafting correspondence to Gray, but part of it involved a conference with counsel for Acceptance.  Therefore, the Court reduced the entry from 1.0 to 0.25.

Court for assessing the reasonableness and necessity of the attorneys' fees sought, and finds that no additional adjustments to the lodestar are warranted. As a result, Plaintiffs are entitled to an award of $477,453.04 in attorneys' fees. While the attorneys' fees are almost as high as the compensatory damages awarded to Plaintiffs in this case, the Court finds that the fees are reasonable and necessary given the history of this case. The case has been pending for almost three years. Over twenty motions have been filed, and the docket reflects 377 entries. The Court has also been required to hold numerous conferences and conduct two trials.

### 2. Expenses

Expenses recovered as extra-contractual damages must also be reasonable and necessary. *Penthouse*, 2011 WL 6699447 at *13. Plaintiffs seek $39,840.29 in expenses, including filing fees, fees for service of process, expert fees, copying expenses, travel expenses, mediator fees, and transcript fees. Acceptance has not requested any specific reductions to the expenses sought by Plaintiffs; it simply asks the Court to carefully review them.

Plaintiffs included $75.00 in service of process fees incurred on October 14, 2009, while serving First Mercury, another Defendant. In addition, Plaintiffs have included $108.90 in courier fees for utilizing Federal Express to send unspecified materials or correspondence to its process servers in November 2009. This will be reduced by $100.00. Given the time and effort necessary to prosecute this case, including the participation in two trials, the Court finds that Plaintiffs' remaining expenses were reasonable and necessary. Therefore, Plaintiffs' request for expenses is reduced to

$39,665.29.

## B.   Plaintiffs' Request for Permission to File a Post-Appeal Motion for Attorneys' Fees

The Fifth Circuit has held that "[t]he issue of appellate attorney's fees is a matter for the district court following the resolution of an appeal." *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003). Given the protracted history and nature of this case, the filing of requests for attorneys' fees in this litigation could presumably continue indefinitely. The Court will not entertain the filing of any post-appeal motions for attorneys' fees. Plaintiffs have been amply compensated in the Court's view, and the time has come for this litigation to draw to a close.

## C.  Plaintiffs' Motion for Interest

### 1. Prejudgment Interest

Plaintiffs request an award of prejudgment interest as to the $403,348.06 in costs taxed against Woodward in the arbitration. In cases where a federal court's jurisdiction is based on diversity, issues related to an award of prejudgment interest are governed by state law. *Harris v. Mickel*, 115 F.3d 428, 429 (5th Cir. 1994). Under Mississippi law, a judge's decision concerning whether to grant prejudgment interest is discretionary. *Pub. Employees' Ret. Sys. v. Freeman*, 868 So. 2d 327, 329 (Miss. 2004).

> As a general rule, in actions for breach of contract of insurance, when the amount which the insured is entitled to under the contract is withheld after payment is due, interest on such amount can be allowed as damages. For interest to be allowed, the amount due must have been

> liquidated when the claim was originally made, or the denial of the claim must have been frivolous or in bad faith. Even if the claims are liquidated, interest may be denied where there is a bona fide dispute as to the amount of damages as well as the responsibility for the liability therefor.
>
> The purpose of prejudgment interest is not to penalize wrongdoing, but to provide compensation for the detention of money overdue. It compensates insureds for the time value of money.

*Arcadia Farms P'ship v. Audubon Ins. Co.*, 77 So. 3d 100, 205 (¶¶18-19) (Miss. 2012) (internal citations and quotation marks omitted).

Plaintiffs included a non-specific request for prejudgment interest in their Complaint, before the costs at issue were ever taxed to Woodward.[7]  Presumably, Plaintiffs originally sought reimbursement for the costs taxed from all of the Defendant insurers, including those that settled with Plaintiffs on or before October 12, 2010. Throughout this litigation, Acceptance argued that the costs taxed during the arbitration should have been allocated among Acceptance and the settling insurers. The Court rejected this argument at the conclusion of the second trial on February 23, 2012. Plaintiffs' Motion for Interest was filed on March 23, 2012, after the deadline imposed by the Court for filing Motions seeking extra-contractual damages.  In that Motion, Plaintiffs clarified for the first time that they sought prejudgment interest on the costs awarded by the Court in its Order [248] granting Partial Judgment as a Matter of Law.  Plaintiffs assert that interest should be awarded beginning from January 11, 2010, the date on which the arbitration award was released.

---

[7]The Complaint in this case was filed on October 5, 2009, and the arbitration award taxing costs to Woodward was entered on January 11, 2010.  Compl., ECF No. 1-2; Arbitration Award, Pls.' Mot., Ex. 3, ECF No. 368-3.

The Court, in its discretion, declines Plaintiffs' request for prejudgment interest in this matter. Until Plaintiffs filed their Motion for Interest following the bench trial, the basis of their demand for prejudgment interest was unclear. Although the Court ultimately found that the Acceptance policy clearly and unambiguously provided coverage for all of the taxed costs, Acceptance made a good faith argument throughout this litigation that it was entitled to allocation of the taxed costs based on a decision from another jurisdiction. As a result, a bona fide dispute existed as to the amount of costs for which Acceptance was responsible. Moreover, it should be noted that Gray's entitlement to prejudgment interest is questionable pursuant to *Employers Insurance of Wausau v. Dunaway*, 626 F. Supp. 1144 (S.D. Miss. 1986).

### 2. Post-judgment Interest

Federal law governs requests for post-judgment interest. *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). A district court must award post-judgment interest on every money judgment; it is not discretionary. *Id.* (citing 28 U.S.C. § 1961). Pursuant to 28 U.S.C. § 1961, the interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." The rate of post-judgment interest applicable in the present case is 0.18%.

### III.  CONCLUSION

As noted earlier, the Court found in its previous Memorandum Opinion and Order [200] entered on January 12, 2011, that Woodward was entitled to partial

summary judgment, because Acceptance breached its duty to defend Woodward without an arguable basis.  In addition, the Court granted partial summary judgment in favor of Acceptance as to Plaintiffs' punitive damages claim.

During the March 2011 jury trial held in this matter, the Court entered an Order [248] granting Partial Judgment as a Matter of Law, finding that Acceptance is liable for the $403,348.06 in costs that were taxed against Woodward in the underlying arbitration.  The jury found that Woodward and Gray had incurred $393,392.02 in reasonable and necessary attorneys' fees in the arbitration.

The Court next commenced a bench trial in February 2012 and found that Acceptance is entitled to allocation of the $393,392.02 in attorneys' fees and expenses awarded by the jury, but the Court found that Acceptance is not entitled to allocation of the $403,348.06 in taxed costs.  The Court ordered Acceptance to pay twenty percent (20%), or $78,678.40, of the attorneys' fees and expenses incurred by Woodward in the arbitration proceedings, plus the $403,348.06 in taxed costs.

Finally, as discussed previously herein, the Court finds that Plaintiffs' Motion for Extra-Contractual Damages should be granted in part and denied in part.  Plaintiffs are entitled to an award of  $477,453.04 in attorneys' fees and $39,665.29 in expenses.  The Court further finds that Plaintiffs' Motion for Interest should be granted as to their request for post-judgment interest and denied as to their request for prejudgment interest.  Plaintiffs are entitled to post-judgment interest at a rate of 0.18%.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [366]

for Extra-Contractual Damages filed by Plaintiffs is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs are awarded reduced extra-contractual damages in the total amount of $517,118.33.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion [368] for Interest filed by Plaintiffs is **GRANTED IN PART AND DENIED IN PART**.  The plaintiffs are not entitled to prejudgment interest, but they are awarded post-judgment interest at a rate of 0.18%.  The Court will enter a separate Final Judgment pursuant to Federal Rule of Civil Procedure 58 which encompasses all of the rulings made by the Court throughout the course of these proceedings.

**SO ORDERED AND ADJUDGED**, this the 3rd day of May, 2012.


*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE